**UNITED STATES, Appellee,**

v.

**Sergeant George J. MORSE, 385–74–9413, United States Army, Appellant.**

**ACMR 9003420.**

U.S. Army Court of Military Review.

6 Feb. 1992.

For Appellant: Captain Alan M. Boyd, JAGC, Captain Jay S. Eiche, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

A military judge sitting as a special court-martial convicted the appellant, contrary to his pleas, of eight specifications alleging disobedience of lawful orders from officers and noncommissioned officers, in violation of Articles 90 and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 890 and 891 (1982), respectively. His approved sentence provides for a bad-conduct discharge, confinement for five months, forfeiture of $482.00 pay per month for five months, and reduction to Private E1.

On 8 November 1990, the appellant's unit (the 1st Infantry Division Band), located at Fort Riley, Kansas, was alerted for deployment to Saudi Arabia. Two weeks thereafter, the appellant submitted an application for discharge as a conscientious objector to his unit commander. His commander returned the application to him without action on grounds that Army regulations only permitted its submission after appellant's arrival at his next duty station in Saudi Arabia. The specific regulatory provisions relied on by the unit commander are contained in Army Reg. 600–43, Personnel–General, Conscientious Objection, para. 2– 10 (1 Aug. 1983) [hereinafter AR 600–43], which provides in pertinent part:

c. A person who receives orders for reassignment but has not submitted an application, ... may not apply for conscientious objector status until he or she arrives at the new permanent duty station....

d. When a request for conscientious objector status has been denied, the person—

(1) Will comply with reassignment orders, and

(2) May be assigned to any duties, or

(3) May be required to participate in any type of training.

The unit commander also relied on the provisions of a Department of the Army message (Message, HQ, Dep't of Army, DAPE–MPA/DAMO–OD–ADC, 191400Z Oct 90, subject: Desert Shield Personnel Message Number 31—Personnel Applying for Conscientious Objector Status) in deciding to return the appellant's application to him. The message provided that for the purposes of AR 600–43, para. 2–10c, the term reassignment includes "the deployment of personnel away from their present duty location." It further provided, "Notice of 'reassignment', to include an alert for deployment, temporarily precludes soldiers from submitting applications for conscientious objector status until after they have *arrived at their new duty location.*" (Emphasis added).

After his application was returned to him, the appellant was ordered to perform certain duties to enable his unit to deploy to Saudi Arabia. Specifically, he was ordered to "assist in the serviceability inspection and maintenance of the unit's cots," "help assemble cots," and "help load conex inserts." The record indicates that the conex inserts contained musical instruments essential to the unit's mission. The appellant disobeyed the orders, claiming that obedience to them would be inconsistent with his anti-war beliefs and philosophy.

The appellant was then reassigned first to the headquarters company of the post garrison and then to the division's military police company. He resubmitted his appli-

cation at the garrison where it was again returned without action. He subsequently disobeyed orders at the military police unit to "sign for Desert Shield equipment he was being issued prior to deployment to Saudi Arabia" and "to pick up MRE's and equipment." There was no evidence tending to show that the equipment being issued included weapons.

■ In this appeal, the appellant asserts that:

RELIANCE ON DA MESSAGE 31 TO REJECT APPELLANT'S CONSCIENTIOUS OBJECTOR APPLICATION WAS IMPROPER, AS THE MESSAGE WAS AN [sic] PROCEDURALLY DEFICIENT ATTEMPT TO CHANGE AN EXISTING REGULATION AND THEREFORE THE ORDERS ALLEGEDLY VIOLATED BY APPELLANT WERE UNLAWFUL, AS THEY WERE IN OBVIOUS CONFLICT WITH ARMY REGULATION 600–43, PARA. 2–10(A).

Paragraph 2–10a, of the regulation provides:

[P]ersons who have submitted applications [for conscientious objector status] will be retained in their unit and assigned duties providing minimum practicable conflict with their asserted beliefs, pending a final decision on their applications. Reassignment orders received after the submission of an application will be delayed until the approval authority makes a final determination.... Except for this restriction [prohibiting trainees from being required to study, use or handle arms], conscientious objector applicants are subject to all military orders and discipline, and regulations to include those on training.

The appellant argues that had his original unit commander forwarded his application for discharge to authorities competent to act upon it, as required by the regulation, the orders which appellant disobeyed would not have been issued to him and he would not have been convicted of having violated them. We disagree with the appellant's argument on legal and logical grounds.

The appellant's complaint is predicated on the theory that the Army's action in amending its own regulations by message violated the "notice and comment" requirements of the Administrative Procedure Act, 5 U.S.C. § 552(a)(1)(D) and (E) (1982) [hereinafter APA]. Those provisions mandate that federal administrative agencies publish in the Federal Register "substantive rules of general applicability," "statements of general policy or interpretations of general applicability," and "each amendment, revision, or repeal of the foregoing." In opposition, the government asserts that the publication requirements enumerated above are inapplicable to the circumstances of this case as the message in question does not effect a change to AR 600–43, para. 2–10(a), but merely provides guidance for its application. The government also contends that the personnel practices purportedly modified by the message are "internal personnel rules" which are exempt from the publication requirements under section 552(b)(2) of the APA. ("This section does not apply to matter that are ... related solely to the internal personnel rules and practices of an agency....")

This issue has been litigated in the federal courts. In *Pruner v. Department of the Army,* 755 F.Supp. 362 (D.Kan.1991), a serviceman assigned to Fort Riley moved for injunctive relief to restrain the Army from refusing to process his application for conscientious objector status prior to reassigning him to Southwest Asia to participate in Operation Desert Shield. Like the appellant in this case, he argued that DA Message 31 violated the publication requirements of the APA. The court rejected the servicemember's contention on the grounds that the message concerned an internal personnel matter and was exempt from the publication requirements under the statute. We also find the government's reasoning persuasive and reject appellant's contention that DA Message 31 violated the APA.

■ The appellant has alternatively contended that the message change violated certain requirements of the Army regulations governing the publication of changes thereto. He specifically cites

Army Reg. 25–30, Information Management: Publishing and Printing, para. 2–52(b) (28 Feb. 1989) [hereinafter AR 25–30] as purporting to preclude the practice. The government has restated its position that DA Message 31 is not a change to AR 600–43 but merely interpretive guidance and requests that we defer to its interpretation. *Pifer v. Laird,* 328 F.Supp. 649 (N.D.Cal.1971). Here too, we agree with the government. Moreover, the procedures set out in AR 25–30 for promulgation of changes to Army regulations do not confer substantive benefits or rights to individual servicemembers. Rather, they are designed to enhance the administrative efficiency of the Army. Hence, the appellant's reliance on them as a basis for avoiding obedience to legitimate orders is misplaced. *See United States v. Perry,* 14 M.J. 856, 859–60 (A.C.M.R.1982), *pet. denied,* 16 M.J. 135 (C.M.A.1983) (procedural rules designed to effect notification of official decisions do not confer substantive rights to individual servicemembers). Accordingly, we conclude that the appellant's commanders acted properly in returning the appellant's application to him on the basis of the message change to the regulation.

We also reject appellant's contention that the denial of his application somehow caused his disobedience of the orders in question. This issue was previously examined by the Air Force Court of Military Review in *United States v. Ashley,* 48 C.M.R. 102 (A.F.C.M.R.1973). The Air Force court held:

> A serviceman must obey all lawful orders until such time as his military status is terminated. *United States v. Cates, supra,* 45 CMR [597 (A.F.C.M.R.1972)] at page 600. *United States v. Noyd,* 18 USCMA 483, 40 CMR 195 (1969) suggests that an order might be unlawful if it is specifically generated by an improper denial of an application for conscientious objector status. But, in the case *sub judice,* there is simply no nexus between the processing of the accused's application and the giving of the orders which he disobeyed. Hence, the so-called *Noyd* defense is not available to him. *United States v. Lenox,* 21 USCMA 314, 45 CMR 88 (1972).

*Id.* at 104.

Like the Air Force court in *Ashley,* we do not find any causal relationship between the appellant's disobedience of the orders and the refusal to process his application. *Cf. United States v. Dix,* 44 C.M.R. 888 (A.C.M.R.1971); *United States v. Forrest,* 44 C.M.R. 692 (A.C.M.R.1971).

Finally, we note that the orders involved noncombatant duties which likely would not have conflicted with the appellant's beliefs. Hence, even assuming, *arguendo,* the appellant's application for discharge as a conscientious objector had been improperly returned to him, he nevertheless could properly be required to obey the orders. *United States v. Patten,* 43 C.M.R. 820 (A.C.M.R.1971) (order to attend hygiene classes held permissible); *United States v. Chase,* 43 C.M.R. 693 (A.C.M.R. 1971) (order to participate in civil disturbance training held permissible); *but see United States v. May,* 41 C.M.R. 663 (A.C.M.R.1969) (order to draw a weapon held impermissible).

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge GRAVELLE concur.