**UNITED STATES, Appellee,**

v.

**Specialist Willie L. JOHNSON, III, 587–31–8930, United States Army, Appellant.**

**No. ACMR 9100315.**

U.S. Army Court of Military Review.

18 June 1993.

Reconsideration Denied 2 Sept. 1993.

For Appellant: Major Fran W. Walterhouse, JAGC, Captain Timothy M. Lawlor, JAGC, Captain Roy H. Hewitt, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Donna L. Barlett, JAGC, Captain John P. Saunders, JAGC (on brief).

Before NAUGHTON, BAKER and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

JOHNSTON, Judge:

 Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of missing movement through design and willful disobedience of a superior commissioned officer in violation of Articles 87 and 90, Uniform Code of Military Justice, 10 U.S.C. §§ 887 and 890 (1988) [hereinafter UCMJ].[1] The convening authority approved the sentence of no punishment.

The issue in this case is whether a soldier who claims conscientious objection and is prevented by his military superiors from submitting a conscientious objection application may be convicted for disobedience of an order to deploy for Operation Desert Shield and for missing the movement of his unit in support of those operations. We

have concluded that the findings and sentence should be set aside as the appellant was ineligible for overseas service at the time he was ordered to deploy to Saudi Arabia.

### I.

The charges in this case arose when the appellant refused to board a flight with his unit for deployment to Saudi Arabia as a part of Operation Desert Shield. At the time of the incident he was assigned as a member of the 4th Squadron, 3d Armored Cavalry Regiment, Fort Bliss, Texas, and had served successfully in the Army for more than five years.

In April, 1989, while he was stationed at Fort Bliss, the appellant began studying religion to become a Jehovah's Witness. By the autumn of 1989, he questioned the viability of remaining in the military and met with church elders to determine what to do. He testified that after receiving their counsel, he decided to remain on active duty and finish out the short time remaining on his enlistment.

In early August 1990, the appellant's unit was alerted that they might be required to deploy to Saudi Arabia in support of the Desert Shield operation. In late August 1990, the appellant discussed his claim of conscientious objection with his commanding officer and other officers in the unit. The commander advised him at the time that it was "not a good idea to submit the [conscientious objector] packet." Thereafter, the appellant was scheduled to deploy with his unit to Saudi Arabia. Al-

---

1. This appeal was brought when the court set aside the appellant's original conviction and sentence on similar charges and ordered a rehearing. The appellant was convicted at the original trial of missing movement through design and disobedience of a commissioned officer in violation of Articles 87 and 90, UCMJ. The approved sentence included a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1. The appellant served approximately thirteen months in the confinement facility at Fort Leavenworth while his case was pending on appeal before this court.

On 4 March 1992, we set aside the conviction and sentence because of the ineffective assistance of trial defense counsel and the unexcusable interference by the military judge with the appellant's attempt to raise a defense based upon his asserted status as a conscientious objector. A copy of the opinion, including a lengthy recitation of the issues present in the case, is set forth as an appendix to this opinion.

Although the punishment imposed and approved by the convening authority is below the threshold for that ordinarily required for review by the court under Article 66(b)(1), UCMJ, those proceedings were conducted under our ongoing appellate supervision of the military justice system. See Article 66(d), UCMJ; *Boudreaux v. U.S. Navy–Marine Corps*, 28 M.J. 181 (C.M.A. 1989).

though he refused to deploy, he was not charged with that offense.

In October, 1990, the appellant was assigned to a provisional unit at Fort Bliss because of his failure to deploy with his old unit. The appellant attempted to submit a conscientious objection packet to his new chain of command, but he was told by his commander that he would have to deploy overseas and that the packet would be accepted and evaluated at the overseas duty location.

On 25 November, 1990, after learning that the appellant felt he could not deploy for possible combat operations, the appellant's commander ordered him to board a flight for Saudi Arabia scheduled for later that day. The commander ensured that the appellant understood the order and the consequence for failing to obey. Although the appellant continued to perform all other military duties in a satisfactory manner, he disobeyed the order to deploy and intentionally missed the movement.

## II.

The lawfulness of the order from the unit commander to deploy and the appellant's legal obligation to comply with the scheduled overseas movement depend upon his eligibility for overseas service. In order to resolve the issues before us, we need to address two closely related questions: first, whether the appellant was precluded by Army Regulations from filing his conscientious objection application once his unit was alerted for deployment; and second, whether he was ineligible for overseas service after he attempted to file his application but was prevented from doing so by his military superiors.

Procedures for conscientious objector applications are specified in Army Regulation 600–43, Personnel–General: Conscientious Objection, (7 August 1987) [hereinafter AR 600–43]. Paragraph 2–10c of that Army Regulation states that a soldier "who receives orders for reassignment but has not submitted an application . . . may not apply

for conscientious objector status until he or she arrives at the new permanent duty station."

At trial, the government argued that the appellant had received "orders for reassignment" within the meaning of AR 600–43, paragraph 2–10c, before filing his conscientious objection application and thus was required to deploy to Saudi Arabia, where his application would be processed. In support of this position, appellant government counsel cite Desert Shield Personnel Message 31 [hereinafter DSPM 31].[2] According to government counsel, DSPM 31 "clarified" conscientious objection application procedures and overseas service eligibility criteria by providing in pertinent part that:

1. For the purposes of AR 600–43, paragraph 2–10c the term "reassignment["] includes the deployment of personnel away from their present duty location.
2. Notice of "reassignment", to include an alert for deployment, temporarily precludes soldiers from submitting applications for conscientious objector status until after they have arrived at their new duty location.
3. AR 614–30, Table 3–1, Rule 8 applies only to those soldiers who have submitted a formal application for conscientious objector status, pursuant to AR 600–43, prior to receiving notice of "reassignment". A formal application consist [sic] of DA Form 4187 and all of the personal information required by appendix B, AR 600–43.

DSPM 31, para. 1, 2, and 3.

We disagree with the government's characterization of DSPM 31 as a "clarification" rather than a change to the regulation. It is clear that DSPM 31, paragraph 2, attempted to change the conditions under which soldiers may submit conscientious objection applications. Although AR 600–43, paragraph 2–10c, specifies that a soldier "who receives orders for reassignment" may not submit an application until arrival at the new unit, DSPM 31 sought to expand that disqualification to include sol-

**2.** Message, HQ, Dep't of Army, DAPE–MPA/ DAMO–OD–ADC, 191400, Oct 90, subject: Desert Shield Personnel Message Number 31–Personnel Applying for Conscientious Objector Status.

diers who were part of units that had been alerted for deployment. Rather than merely clarifying ambiguous terminology, the message altered overseas service eligibility criteria and conscientious objection filing procedures.

■ We refuse to accord DSPM 31 any presumption of administrative regularity because of its inconsistent use of regulatory terminology, its failure to specify that the changes in Army Regulations were made pursuant to the authority of the Secretary of the Army, and its failure to comply with proper procedures to change Army Regulations.[3] Consequently, this case will be resolved by relying on the regulatory language of existing Army Regulations.

■ We find that neither DSPM 31 nor AR 600–43, paragraph 2–10c, required the appellant to delay submission of his conscientious objection application even though his unit had been notified of the pending deployment. Neither a *unit* alert for deployment nor a *unit* movement order is analogous to the "orders for reassignment" that an *individual* receives. Likewise, the specific order to deploy given to the appellant by his commander is unlike the "orders for reassignment" that postpone the submission of a conscientious objection application. He remained in the same unit, a unit that was temporarily changing its duty location to comply with the contingencies of the world situation.

■ We note that AR 600–43, paragraph 2–10c, makes specific reference to processing a conscientious objection application at the "new permanent duty station." The

unit deployment in this case to participate in Desert Shield/Desert Storm did not result in a permanent change of duty station for the appellant. While a new duty location was involved, there was no change in duty station within the meaning of AR 600–43, paragraph 2–10c. Thus, the appellant never received "orders for reassignment" that would have prevented submission of a conscientious objection application until after arrival at the new unit.

■ Our second inquiry concerns the appellant's eligibility for overseas service in Desert Shield and Desert Storm. We judicially note that these operations were contingency operations for the United States Army. A soldier who has "submitted a formal claim for conscientious objector status under AR 600–43" during such contingencies is ineligible for overseas service until Headquarters, Department of the Army [hereinafter HQDA] takes final action. Army Reg. 614–30, Assignments, Details, and Transfers, Oversea Service, Table 3–1, Rule 8 (1 April 1988), Eligibility for Overseas Service—Contingency Operations and M–Day, 1 April 1988 [AR 614–30, table 3–1]. As the unit deployment in this case was part of the contingency operations in support of Desert Shield and Desert Storm, the appellant was ineligible for overseas service and participation in Desert Shield if he had submitted a formal conscientious objection application.[4]

■ Based on the facts of this case, we are satisfied that the appellant attempted to file a formal conscientious objection application prior to receiving orders for reassignment. He was prevented from filing

---

3. Army Reg. 25–30, The Army Integrated Publishing and Printing Program, para. 2–52(b) (27 March 1989), specifies that electronic messages will not be used to change Army publications.

4. *Pruner v. Department of the Army*, 755 F.Supp. 362 (D.Kan.1991) is not controlling in this regard. In *Pruner* the soldier sought injunctive relief to restrain the Army from refusing to process his conscientious objection application before moving him to Saudi Arabia as part of Operation Desert Shield. The court reasoned that DSPM 31 was an internal personnel matter that was exempt from the publication requirements of the Administrative Procedure Act, 5 U.S.C. 552(a)(1)(D) and (E) (1988) [hereinafter

APA]. The court did not reach the question we address, i.e., what was the impact of DSPM 31, an electronic message change, on a unit commander's order issued in apparent contravention of AR 614–30, Table 3–1.

In addition, the principles discussed in *United States v. Morse*, 34 M.J. 677 (A.C.M.R.1992) are inapplicable to this case. *Morse* dealt with the lawfulness of orders to perform duties that provided minimum practical conflict with asserted conscientious objection beliefs rather than the impact of overseas service eligibility criteria on an order to deploy overseas. *See* AR 600–43, para. 2–10a.

the complete application by his military superiors. We find that his efforts were tantamount to filing a formal claim for conscientious objection. Accordingly, the appellant was ineligible for overseas service by virtue of being in a category of soldiers identified by the Secretary of the Army as being ineligible.

Although AR 614–30, paragraph 3–2, provides that "HQDA will modify or rescind the [overseas deployment] restrictions as appropriate, depending on the circumstances," there is no evidence in the record that AR 614–30, Table 3–1 was modified or rescinded. Desert Shield Personnel Message 31 attempted to change the eligibility of soldiers to file conscientious objection applications, but it did not modify or rescind the explicit provisions of AR 614–60, Table 3–1, that made the appellant ineligible for overseas deployment. Thus, the unit commander was not lawfully able to schedule the appellant for movement overseas or to order him to deploy to Saudi Arabia until HQDA took final action on the conscientious objection application.

The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judge NAUGHTON and Judge BAKER concur.

## APPENDIX

## UNITED STATES ARMY COURT OF MILITARY REVIEW

Before NAUGHTON, HOWELL and JOHNSTON, Appellate Military Judges.

UNITED STATES, Appellee,

v.

Specialist WILLIE L. JOHNSON, III, 587–31–8930, United States Army, Appellant.

ACMR 9100315

US Army Air Defense Artillery Center and Fort Bliss

P.P. Brown, Military Judge

For Appellant: Captain Timothy M. Lawlor, JAGC (argued), Major Michael J. Kelle-

her, JAGC, Captain James M. Heaton, JAGC, Captain Robin N. Swope, JAGC, Captain Michael W. Meier, JAGC, Captain Michael P. Moran, JAGC (on brief).

For Appellee: Captain Samuel J. Smith, Jr., JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kenneth T. Grant, JAGC (on brief).

4 March 1992

## MEMORANDUM OPINION

PER CURIAM:

Contrary to his pleas, the appellant was convicted by a general court-martial consisting of officer members of missing movement through design and willful disobedience of a commissioned officer in violation of Articles 87 and 90, Uniform Code of Military Justice. The approved sentence included a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1.

The charges in this case arose when the appellant refused to board a flight with his unit for deployment to Saudi Arabia as part of the Desert Shield operation. His unit commander learned of his intention to refuse to embark, and ordered him to catch the flight after ensuring that he understood the order and the consequences for failing to deploy. The appellant apparently felt that the deployment and order to deploy were illegal because he had submitted or intended to submit a conscientious objector packet.

Although the appellant has assigned several errors, we will address only the allegation concerning the ineffective assistance of counsel. The trial defense counsel did not make an opening statement, asked only three questions on cross-examination to each of the two government witnesses called no witnesses, presented no evidence on the merits,[1] and made only an abbreviat-

1. We note the military judge forbade the trial defense counsel from making any attempt to

ed argument on findings. His performance at trial on the merits failed to meet even the minimal standards expected of defense counsel. In short, the demonstrated efforts of the trial defense counsel on the merits revealed an apparent failure of the adversary process to the substantial prejudice of the accused. *See United States v. Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

There are significant issues in this case that can be explored during a rehearing. For example, was the accused ordered to deploy in violation of Army Reg. 600–43, Conscientious Objection (1 Aug. 1983) [hereinafter AR 600–43]? Was the appellant told by his military superiors that he could not submit a conscientious objector application? Did he submit such an application at any time before he received the order to deploy? Would such a submission make an order to deploy unlawful and preclude a conviction for missing movement through design? *See* AR 614–30, Oversea Service, table 3–1 (16 Mar. 1988) [hereinafter AR 614–30] (a soldier who submits a formal claim for conscientious objector status is ineligible for overseas service until HQDA takes final action). Did the government improperly attempt by means of an "interpretation/clarification," to change the conscientious objector regulation in an effort to preclude such applications prior to Desert Shield/Desert Storm? *See* Army Reg. 25–30, The Army Integrated Publishing and Printing Program, para. 2–52(b) (28 Feb. 1989); Message, HQ, Dep't of Army, DAPE–MPA/DAMO–OD–AOC, 191400Z Oct 90, subject: Desert Shield Message Number 31. Does the appellant have a colorable claim that the order he received

was illegal in that it was in conflict with his first amendment rights? Was the order that he received from a superior commissioned officer to deploy as scheduled given for an improper purpose? Issues such as these can be addressed at a rehearing only with the effective assistance of counsel.[2]

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

---

present a defense based on a claim that the unit movement and order to deploy violated the accused's first amendment rights. The premature ruling by the military judge foreclosed the effort by counsel to lay the basis for the contention based on first amendment grounds. The ruling did not enhance the appearance of the military justice system for the even-handed and fair administration of military justice.

2. The recent decision of this Court in *United States v. Morse,* 34 M.J. 677 (A.C.M.R.1992) is not dispositive of these issues as the orders in that case involved noncombatant duties and there was no causal relationship between the disobedience and the conscientious objection application. In addition, the case did not address the effect of AR 614–30, table 3–1, on an order to deploy overseas.