892

UNITED STATES, Appellee,

v.

Specialist William C. WALKER, 499–70–1308, United States Army, Appellant.

ACMR 9101209.

U.S. Army Court of Military Review.

29 June 1993.

For Appellant: Robin N. Swope, JAGC, Captain Robert L. Carey, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before DE GIULIO, Senior Judge, and WALCZAK and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

WALCZAK, Judge:

Appellant was tried by a military judge sitting as a general court-martial. Contrary to his pleas, he was found guilty of missing movement and disobedience of a lawful order in violation of Articles 87 and 90, Uniform Code of Military Justice, 10 U.S.C. §§ 887 and 890 (1988) [hereinafter UCMJ]. The court sentenced the appellant to a bad-conduct discharge, confinement for twenty-seven months, total forfeitures, and reduction to Private E1. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for sixteen months, total forfeitures, and reduction to Private E1.

On 6 October 1992, this court set aside the action of the convening authority and ordered a new staff judge advocate post-trial recommendation and action. This remedy was ordered because the original staff judge advocate did not permit the defense to comment on new matters presented to the convening authority in the addendum to the staff judge advocate's

post-trial recommendation. On 6 January 1993, a new convening authority approved the findings and sentence.

The appellant asserts five assignments of error, however, we will only address the first issue as it will be dispositive of the case. Appellant contends that the Department of the Army Desert Shield Personnel Message 31 (Appendix) [hereinafter DSPM 31][1] violated Department of Defense Directive 1300.6[2] as well as his due process and equal protection rights. We agree.

## I

### Facts

The appellant's offenses occurred following the alert of his unit for deployment to Operation Desert Shield. On 8 November 1990, after his unit was notified of its deployment to Saudi Arabia, the appellant applied for conscientious objector status. He maintained that his Islamic beliefs forbad him from engaging in offensive action against fellow Muslims. Following an interview with his company commander, the appellant was reassigned to the Military Affiliated Radio Systems (MARS) station. His reassignment was ordered so that the appellant would have duties which did not conflict with his religious beliefs and because elements of the MARS station would remain in the United States after the majority of units departed to Operation Desert Shield. In compliance with the conscientious objection regulation,[3] the appellant discussed his request with the division chaplain on 16 November. On 14 December, a mental status evaluation was conducted.

In late November or early December 1990, the appellant's unit commander, while attending a 2d Armored Division staff meeting, became aware of DSPM 31, dated 19 October 1990. The gist of the message provided that soldiers assigned to units

alerted for deployment to Operation Desert Shield would deploy, and once in their new location, would then be eligible to apply for conscientious objector status. Following this briefing, processing of appellant's application ceased. Appellant's unit commander testified that sometime between 5 and 12 December, he notified the appellant that he could submit an application for conscientious objector status upon his arrival in Saudi Arabia.

On 2 January 1991, the Department of the Army revised DSPM 31. The modification permitted soldiers assigned to units deploying to Operation Desert Shield to submit a conscientious objector application as operational and mission requirements permitted. The decision whether a conscientious objector applicant would deploy was reserved to the commanding officer exercising general court-martial authority. Under the revised message, applicants, could now apply for conscientious objector status at their present duty location instead of waiting until arrival at their new location. It further provided that soldiers were not precluded from deployment and, unless an application had been approved by the appropriate authority, the soldier would prepare for deployment.

In the instant case, appellant's chain of command was not aware of the 2 January modification of DSPM 31, nor was he advised of its content. Additionally, the record is void of any matter indicating whether the appellant's application was presented to the commanding officer exercising general court-martial authority or whether that officer weighed operational and mission requirements with appellant's request for conscientious objector status.

On 6 January 1991, the Deputy Staff Judge Advocate of the 2d Armored Division, spoke to appellant encouraging him to deploy with his unit to Saudi Arabia. Ap-

1. Message, HQ, Dep't of Army, DAPE–MPA/DAMO–OD–ADC, 191400Z, Oct 90, Desert Shield Personnel Message Number 31—Personnel Applying for Conscientious Objector Status.

2. Dep't of Defense Directive 1300.6, Conscientious Objectors (Aug. 20, 1971) [hereinafter DOD Dir. 1300.6].

3. Army Reg. 600–43, Personnel—General: Conscientious Objection (7 Aug. 1987) [hereinafter AR 600–43].

pellant declined to participate based on his conscientious objection and missed the movement of his unit to Operation Desert Shield. Later, the deputy and staff judge advocate met with the appellant's company commander to discuss appellant's refusal to deploy with his unit. On 8 January 1991, the appellant was ordered "to process through the deployment site and board the bus to Hamburg." The appellant again declined to obey the order.

## II

### DSPM 31

■ In two recently decided opinions, *United States v. Johnson*, 37 M.J. 982 (A.C.M.R.1993) and *United States v. Wiley*, 37 M.J. 885 (A.C.M.R. 29 June 1993), this court conducted a thorough analysis of DSPM 31 and its promulgation. In *Wiley*, the court found that DSPM 31 was an unlawful change to AR 600–43, the then governing regulation for processing of conscientious objector applications, because it was not approved by the Secretary of the Army. The court further found that the message impermissibly expanded the disqualification of soldiers who were assigned to units alerted for deployment from applying for conscientious objector status. Rather than merely clarifying ambiguous terminology, the message altered overseas service eligibility criteria and conscientious objection filing procedures. Specifically, in *Wiley* the court held that "DSPM 31 wrongly changed Army Regulations and [a] commander's order ... to deploy was thereby unlawful." *Wiley*, 37 M.J. 886. Rather than restate what two panels of this court have said in *Johnson* and *Wiley*, we similarly hold that the order given the appellant to prepare for deployment and board the bus to Hamburg, under the unique facts of this case, was illegal.

Under the facts of this case, we are satisfied that the appellant attempted to submit a formal conscientious objector application. Since DSPM 31 had no legal effect, the parent Army Regulation 600–43 controls. *See generally Wiley*, 37 M.J. 885 (A.C.M.R.1993). Accordingly, the appellant

could submit an application for conscientious objector status any time up until deployed. When the appellant missed the movement of his unit on 6 January and disobeyed the order to deploy on 8 January 1991, he was in that protected class that the Secretary of the Army had designated as not eligible for deployment. *See* Army Reg. 614–30, Assignments, Details, and Transfers: Overseas Service, Table 2–1, rule 29 (1 Apr. 1988). Because he was not eligible for deployment to Operation Desert Shield, the appellant's missed movement and disobedience of the order to deploy were not violations of the UCMJ.

■ Additionally, when the appellant missed the movement of his unit and disobeyed the order to deploy, the 2 January 1991 modification of DSPM 31 was applicable. There is, however, no showing that the procedures outlined in that change were ever followed in appellant's case. While we acknowledge that during this period of time events were moving very quickly, that does not excuse a failure to follow procedural mandates.

Accordingly, the findings of guilty for missing movement and disobedience of a lawful order cannot stand.

The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judge DE GIULIO and Judge GONZALES concur.