UNITED STATES, Appellee

v

STEVEN C. WILSON, Private, U. S. Marine Corps, Appellant

20 USCMA 71, 42 CMR 263

No. 22,776

August 28, 1970

*Captain Harry N. Lembeck,* USMCR, argued the cause for Appellant, Accused.

*Lieutenant James E. Akers,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Lieutenant Thomas F. Bastow,* JAGC, USNR.

### Opinion of the Court

QUINN, Chief Judge:

Paragraph 154*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), provides that when an accused has pleaded not guilty, "a stipulation which practically amounts to a confession should not be received in evidence." At trial, the accused and his counsel consented to the admission into evidence of a stipulation of facts. It is now contended that receipt of the stipulation in evidence violated the Manual provision.

The accused was arraigned before a military judge, sitting without court members, on a charge of desertion terminated by apprehension, in violation of Article 85, Uniform Code of

Military Justice, 10 USC § 885. He pleaded not guilty to that offense, but guilty to the lesser offense of unauthorized absence from May 8 to June 12, 1969. The stipulation, which was the only evidence offered by the prosecution, is as follows:

"On 10 April 1969 the accused was tried by General Court-Martial at Marine Corps Air Station, Cherry Point, North Carolina. As a result of this court-martial the accused was sentenced to be discharged from the service with a bad conduct discharge, to be reduced to the pay grade E–1, to forfeit all pay and allownaces [sic] and to be confined at hard labor for one year. On 8 May 1969 the accused was in the status of confinement at the Marine Corps Air Station, Cherry Point, North Carolina brig serving sentence. On 8 May 1969 while outside the confinement facility on a working party the accused, without authority, departed from the area of the working party and was not seen or heard from again by brig personnel, who had charge over him. On 12 June 1969 the accused was apprehended by agents of the Federal Bureau of Investigation at Knox, Indiana."

Certain anomalies are present in the Manual's exclusionary rule. See United States v Gerlach, 16 USCMA 383, 37 CMR 3 (1966). We pass these, however, to consider directly whether the stipulation "practically amounts to a confession." The Government contends that it does not because no specific mention is made of an intent to remain away permanently, one of the essential elements of desertion. Oppositely, the accused argues that possession of that intent can be, and most often is, inferred from other facts in evidence, and since the other facts justify an inference of the existence of the intent, a specific reference to intent is not determinative; he contends that the stipulation justifies the inference of the requisite intent and is subject to the exclusionary rule.

The Manual provision suggests that something less than a total and unequivocal confession of guilt is encompassed by its terms. Without attempting to draw a definitive line of demarcation between what "practically amounts to a confession" of desertion and what does not, we entertain no doubt that if the agreed facts establish an unauthorized absence and compel an inference of the existence of the intent to remain away permanently, the stipulation would "practically" amount to a confession of desertion. The import of the stipulation, therefore, must be determined, as the accused contends, not just from the specific facts, but with due consideration to the reasonable inferences that can be drawn from those facts.

Two omissions are apparent in the stipulation. The first concerns the period of unauthorized absence. While the stipulation indicates that the accused was apprehended by agents of the Federal Bureau of Investigation, it does not explicitly indicate he was apprehended as an absentee, or that the circumstances of his apprehension were such as to terminate the absence by apprehension.[1] See United States v Cowans, 4 USCMA 308, 15 CMR 308 (1954); United States v Nickaboine, 3 USCMA 152, 11 CMR 152 (1953). The stipulation is also silent on the essential question of the accused's intent. Perhaps the duration of the absence and the intent can be inferred, but in a light most unfavorable to the accused, the inferences are not compelling, either in logic or on the basis of judicial precedent. Certainly, the accused did not regard the stipulation as conceding the intent; he predicated his defense upon testimony denying the intent. The period of absence was thirty-five days;

---

[1] We recognize, of course, that the accused's plea to the lesser offense obviated the need for other evidence of the termination of the absence, but the omission bears on the question of whether the stipulation "practically amounts to a confession" of the charge.

the circumstances of the initiation of the absence, as reflected in the stipulation, were not so demonstrative of rejection of the service as to compel a conclusion that the accused departed with the intent to remain away permanently. In United States v Peterson, 1 USCMA 317, 319, 3 CMR 51 (1952), for example, we held that evidence of an absence of forty-six days, initiated by a violation of "stragglers orders" and preceded by an earlier period of unauthorized absence, was insufficient to support a conviction for desertion, in the face of uncontradicted, and not inherently improbable, testimony by the accused that he did not intend to remain away permanently and that he stayed at home expecting that the Marine Corps " 'would pick . . . [him] up.' " See also United States v Logas, 2 USCMA 489, 9 CMR 119 (1953). It is apparent from the record of trial that, if the stipulation supported an inference of an intent to remain away permanently, the accused and his counsel regarded it as so weak as to be readily overcome by the accused's sworn denial that he ever entertained that intent. The accused's trial view of the stipulation is entitled to weighty consideration. United States v Cambridge, 3 USCMA 377, 384, 12 CMR 133 (1953); United States v Johnson, 3 USCMA 447, 454, 13 CMR 3 (1953). We are unable to conclude that this interpretation of the stipulation was so unreasonable as to brand the accused's consent an egregious mistake, and to condemn the stipulation's admission into evidence as a violation of the Manual's exclusionary rule.

In a second assignment of error, the accused contends that, even with the stipulation, the evidence is insufficient to sustain a conviction for desertion. His argument is predicated principally upon the alleged deficiency of the stipulated facts to spell out the requisite intent to remain away permanently and his express denial that he ever entertained that intent. If the accused's testimony was as forthright and consistent as that in *Peterson*, the question would not be free from doubt. However, there are contradictions and incriminating admissions in the accused's testimony that significantly detract from his denial and contribute to an inference that he, in fact, intended to remain away permanently. At one point, for example, the accused testified he absented himself because he was "concerned about home," and particularly his family's "money problems"; yet, he admitted that during his entire absence he made no effort whatever to obtain employment and the only money he contributed to his family was about $75.00 to $100.00, which he "borrowed from some friends" without giving "a lot of thought about paying it back." The accused referred to two other "problems" that influenced him to absent himself. One of these was his mother's concern about his two younger brothers. His mother worked at night and was "worried" that the boys were "running around" at night; she could not, said the accused, "afford to pay anybody to stay . . . and watch them." The other problem was that his common-law wife "wanted . . . to settle down." She lived in Knox, Indiana, with her parents; they were nomadic, having resided in eight different towns within two years. The accused testified that he talked to the girl's parents "a couple of times" and "convinced them" that she should stay at his home. Although the accused did not indicate the specific time the girl moved into his household, the record reasonably indicates that it was an appreciable time before his apprehension. While it appears that this arrangement solved both problems that purportedly influenced the accused to leave, he made no move to return to military control.

Viewing the entire record of trial, including the testimony by the accused, there is, in our opinion, sufficient evidence to support the finding by the military judge and the intermediate appellate fact finders that the accused intended to remain away permanently. United States v Ferretti, 1

USCMA 323, 3 CMR 57 (1952); United States v Hendon, 7 USCMA 429, 22 CMR 219 (1956). Accordingly, the decision of the United States Navy Court of Military Review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Charged with one specification of desertion for a period of thirty-four days, the accused pleaded not guilty but guilty to the lesser included offense of unauthorized absence, terminated by apprehension. After accepting the plea of guilty, following an appropriate inquiry into the providency thereof, the military judge, before whom the case was tried, informed the accused that he would not in any way consider that plea with respect to his guilt or innocence of the charged offense of desertion. Thereafter, the prosecution presented the following stipulation of fact (Prosecution Exhibit 1) as its only evidence and rested its case.

"With the consent of the accused the prosecution and defense stipulate that the following facts are true:

"On 10 April 1969 the accused was tried by General Court-Martial at Marine Corps Air Station, Cherry Point, North Carolina. As a result of this court-martial the accused was sentenced to be discharged from the service with a bad conduct discharge, to be reduced to the pay grade E–1, to forfeit all pay and allownaces [sic] and to be confined at hard labor for one year. On 8 May 1969 the accused was in the status of confinement at the Marine Corps Air Station, Cherry Point, North Carolina brig serving sentence. On 8 May 1969 while outside the confinement facility on a working party the accused, without authority, departed from the area of the working party and was not seen or heard from again by brig personnel, who had charge over him. On 12 June 1969 the accused was apprehended by agents of the Federal Bureau of Investigation at Knox, Indiana."

In his defense, the accused testified under oath and categorically denied ever having an intent to remain away from the service permanently. In addition, he related his activities during the period of absence and stated that he resided at his and his wife's homes. Concern for his mother and his common-law wife, both of whom had money and personal problems, motivated his absence.

The accused was found guilty as charged.

The issue before this Court is whether the above-quoted stipulation should have been received in evidence in view of the provisions of paragraph 154b(1), Manual for Courts-Martial, United States, 1969 (Revised edition), which state in pertinent part that:

". . . If an accused has pleaded not guilty and the plea still stands, a stipulation which practically amounts to a confession should not be received in evidence."

The reason for the Manual provision, which has the force of law (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962)), is readily apparent. It would be highly inconsistent to allow an accused who has declared his innocence by means of a not guilty plea to immediately admit his guilt in the form of a stipulation of fact and thereby relieve the Government of its burden to prove his guilt beyond a reasonable doubt.

In the case at bar, the stipulation established three vital facts: (1) The accused was under sentence of a court-martial at the time the unauthorized absence commenced; (2) the absence began while the accused was in a confinement status; and (3) the absence was terminated by apprehension.

It is an accepted axiom of the law that proof of specific intent may be established by circumstantial evidence. From the facts outlined in the stipulation and the reasonable inferences flowing therefrom, the military

judge could conclude *beyond a reasonable doubt* that the accused intended to remain away permanently. United States v Ferretti, 1 USCMA 323, 3 CMR 57 (1952); United States v Williams, 9 USCMA 3, 25 CMR 265 (1958). Nothing was left to be proved. Obviously the prosecution thought so for it presented no other evidence and rested its case simply upon the acceptance by the court of the agreed-upon facts. In my opinion, since the facts admitted and the allowable inferences to be drawn therefrom were such as to "practically" amount to a judicial confession of guilty, the stipulation was within the prohibition of the Manual provision and thus inadmissible in evidence.[2] Paragraph 154*b*, Manual, supra.

My brothers maintain to the contrary, however, and find the necessary additional evidence to sustain the military judge's finding from what they classify as "contradictions and incriminating admissions in the accused's testimony that significantly detract from his denial and contribute to an inference that he, in fact, intended to remain away permanently."

The majority find it significant that the accused made no effort to obtain employment while absent, although one of the reasons for his absence was his family's money problems. He simply borrowed money from friends. After solving his mother's other problem concerning the lack of someone in the home to look after the smaller children while she was at work, by bringing his wife from her home to his mother's, they point to the fact that he made no move to return to military control.

In the first place, since evidence that an unauthorized absentee obtained a job in the civilian community is obviously admissible as bearing on the issue of intent to desert (cf. United States v Kirby, 16 USCMA 517, 37 CMR 137 (1967)), I would draw the opposite conclusion from that of my brothers where an accused did *not* obtain or attempt to obtain employment. Secondly, with reference to his failure to return *immediately* upon the arrival of his wife at his mother's home, the time element is clearly in doubt. The length of the absence was only thirty-four days and the accused, on cross-examination, testified that after he had been home for three weeks, he was still trying to "get my wife's family to let her come and stay with my family and I was still trying to pick up some money when I could."

As I view the record in this case, there is insufficient evidence, *aliunde* the stipulation, to sustain the finding of guilty of desertion.

Since I believe that the stipulation was inadmissible in evidence, I would reverse the decision of the United States Navy Court of Military Review and direct that either a rehearing may be ordered or that the Court of Military Review could affirm the lesser offense of absence without leave and reassess the sentence on that basis.

---

[2] One member of the United States Navy Court of Military Review dissented to that body's affirmance of the accused's conviction on this same ground.