UNITED STATES

v.

**Airman First Class Edward D. POLLOCK, FR 509–44–3805, 6903d Security Squadron, Fifth Air Force (PACAF).**

ACM S24455.

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 Sept. 1976.

Decided 31 Jan. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Isaac D. Benkin, USAFR.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

EARLY, Senior Judge:

Tried by special court-martial, the accused was convicted, despite his pleas, of 12 specifications of uttering checks with intent to defraud, in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a. The approved sentence extends to a bad conduct discharge and reduction to airman basic.

Appellate defense counsel assign two errors. The first asserts that the evidence is insufficient to prove that the checks were dishonored for insufficient funds; the second that the admission of Prosecution Exhibit 1, a stipulation of fact, was erroneous since it amounted to a confession of guilt. Since these two errors are related, they will be discussed together.

Prosecution Exhibit 1 stipulates that on the 12 dates alleged, beginning on 5 July 1976, the accused made and uttered the particular checks for $50 each at the place alleged and received lawful currency in exchange therefor. In addition, the last two paragraphs provide:

The accused was notified that each of the above checks had been dishonored, and the accused failed to redeem any of the said checks within five days of notification of dishonor. All of the checks were redeemed as a result of a military Pay Adjustment Authorization charge in the amount of seven hundred and twenty dollars ($720) which was the face amount of the above listed checks plus a service charge of ten dollars ($10) per check. Said adjustment was entered in the accused's Military Pay Record on 13 August 1976.

On 15 June 1976, the accused had pay in the amount of twenty-five dollars and thirty-one cents ($25.31) sent to his checking account at the Bank of America. On 30 June 1976, the accused had pay in the amount of twenty-five dollars and five cents ($25.05) sent to his checking account at the Bank of America. On 15 July 1976, the accused had pay in the amount of twenty-five dollars and thirty-one cents ($25.31) sent to his checking account at the Bank of America. On 30 July 1976, the accused had pay in the amount of twenty-five dollars and five cents ($25.05) sent to his checking account at the Bank of America.

When Prosecution Exhibit 1 was offered, the military judge advised trial defense counsel that the stipulation admitted "most of the elements of the offenses to which the accused is charged and has pled not guilty." However, defense counsel replied that "[t]he charged offenses involve an intent to defraud and on behalf of the accused the defense is going to present its evidence within that specific element of the charged offense." The military judge then admitted the exhibit.

Subsequently, the military judge noted that the stipulation included information that the accused had received notice that the checks were returned for insufficient funds and that he did not redeem the checks within the five-day period, which he believed would give rise to the statutory presumption of intent to defraud.[1] Again defense counsel acknowledged his understanding but indicated that the defense would not contest those facts but would base the defense on the sole issues of intent and knowledge. Following this, the military judge, upon further reflection, asked the defense counsel: "[W]ould I be correct in presuming that you are aware that this Stipulation of Fact standing alone contains

---

1. The making, drawing, uttering, or delivering by a maker or drawer of a check, draft or order, payment of which is refused by the drawee because of insufficient funds of the maker or drawer in the drawee's possession or control, is prima facie evidence of his intent to defraud or deceive and of his knowl-edge of insufficient funds in, or credit with, that bank or other depository, unless the maker or drawer pays the holder the amount due within five days after receiving notice, orally or in writing, that the check, draft, or order was not paid on presentment.

Article 123a, UCMJ, 10 U.S.C. § 923a.

enough evidence to justify a court returning a finding of guilty to all specifications and the charge?" Counsel replied in the affirmative, but explained: "However, the defense's understanding is that that presumption is a rebuttable presumption and will become an issue of fact for the jury to decide, and it is at that specific point that the defense presents its case." Still unsatisfied, the military judge queried the accused as to whether he understood and consented to the stipulation. When he received an affirmative answer, the military judge then read the elements of the offenses involved and determined that the accused understood them. Finally, the military judge again asked the defense counsel whether the defense would offer evidence regarding the issue of the accused's intent and his knowledge at the time of making and uttering the checks. Once again, the defense counsel signified his understanding of the situation and how he planned to proceed.

After the court was assembled, the prosecution introduced the stipulation and rested.

The accused testified that in the "latter part of June," his wife, then living in her native Taiwan, called him at work and told him that the provost marshal had suspended her exchange and commissary privileges for "suspected misuse." Extremely depressed, and experiencing financial difficulties, he wrote his brother-in-law, "on the last couple days in June," requesting a loan of five hundred and fifty dollars. His brother-in-law had loaned him five hundred and twenty-five dollars in 1972. Expecting to receive this money, he wrote the checks to finance a "drinking spree."

On cross-examination, the accused admitted that he was notified on 14 July that he was not going to receive the money. Nevertheless, he subsequently made and uttered the last seven checks which are the subjects of the instant charge against him. His only explanation was that because of his depressed state of mind, he did not intend to defraud the recipients.

The Manual for Courts-Martial, 1969 (Rev.), paragraph 154b(1) provides:

The parties may make a written or oral stipulation as to the existence or nonexistence of any fact. If an accused has pleaded not guilty and the plea still stands, a stipulation which practically amounts to a confession should not be received in evidence.

All parties at trial apparently agreed that the stipulation together with all permissible inferences drawn therefrom was sufficient to raise the statutory presumption of the requisite intent to defraud and knowledge of insufficient funds, and, thus, by itself, constituted a prima facie case for the Government. We disagree with this assumption.

In *United States v. Wilson*, 20 U.S.C.M.A. 71, 42 C.M.R. 263 (1970), a similar situation was presented. There, under a charge of desertion, the parties stipulated that the accused, a sentenced prisoner as the result of a previous court-martial, departed from the confinement area and was not "seen or heard from again" until apprehended. On appeal, the Government contended that the stipulation did not amount to a confession since there was no specific mention of the intent to remain away permanently. In response, the accused argued that such intent could be and most often was inferred from other facts in evidence, and since the other facts stipulated justified an inference of the existence of the intent, a specific reference to intent was not determinative as to the operation of the Manual's exclusionary rule. The Court held:

The Manual provision suggests that something less than a total and unequivocal confession of guilt is encompassed by its terms. Without attempting to draw a definitive line of demarcation between what "practically amounts to a confession" of desertion and what does not, we entertain no doubt that if the agreed facts establish an unauthorized absence and compel an inference of the existence of the intent to remain away permanently, the stipulation would "practically" amount to a confession of desertion. The import of the stipulation, therefore, must

be determined, as the accused contends, not just from the specific facts, but with due consideration to the reasonable inferences that can be drawn from those facts. 42 C.M.R. at 264.

Notwithstanding this language, the Court found that the stipulation did not amount to a confession since it was silent on the essential question of intent, and, since "in a light most unfavorable to the accused, the inferences are not compelling, either in logic or on the basis of judicial precedent" that the accused harbored the requisite intent. In sum, the Court concluded:

It is apparent from the record of trial that, if the stipulation supported an inference of an intent to remain away permanently, the accused and his counsel regarded it as so weak as to be readily overcome by the accused's sworn denial that he ever entertained that intent. The accused's trial view of the stipulation is entitled to weighty consideration.[2]

42 C.M.R. at 265.

Article 123a, Code, *supra*, proscribes, *inter alia*, the making and uttering of a check with intent to defraud and for the procurement of anything of value, when the maker knows at the time of making and uttering that he has not or will not have sufficient funds in, or credit with, the drawee bank for payment of that check upon its presentment for payment. Further, as indicated in footnote 1, the Article provides a statutory rule of prima facie evidence that when "payment . . . is refused . . . because of insufficient funds," proof of notice thereof and nonpayment within five days is sufficient to establish the requisite intent and knowledge on the maker's part.

As we read the provision, three factors must be proven in order to activate this rule of evidence: (1) check payment must have been refused by the drawee bank *because of insufficient funds*, (2) notice to the maker must have been given that the check was not paid upon presentment, and (3) the maker must have failed to pay the holder the amount due within five days of such notice.

Here, the stipulation is silent as to element (1) above. Moreover, proof that the accused was simply *notified* that his checks were dishonored is not sufficient to establish that payment of his checks was in fact refused by the bank for insufficient funds. The former circumstance is not the evidentiary equivalent of the latter. If it were, proof of element (1) would not be necessary to raise the statutory presumption.

In our view, therefore, the stipulated facts were not sufficient to provide prima facie evidence of the accused's intent and knowledge at the time he issued the checks. Accordingly, Prosecution Exhibit 1 did not "practically" amount to a confession and was properly admitted in evidence.

In view of our resolution of this issue, we must determine whether the evidence of record is otherwise sufficient to establish the accused's guilt of the offenses charged beyond any reasonable doubt. In our opinion, the evidence does not support a finding of the accused's intent to defraud as to those checks written before he received notice that the anticipated loan was not forthcoming. With respect to the remaining offenses, however, we find sufficient proof in the accused's judicial admissions to establish both his requisite intent to defraud and knowledge of the status of his account at the relevant times. We are unmoved by the accused's explanation that he

---

2. We recognize that a distinction exists between the circumstances of the instant case and those in *Wilson, supra*. In the latter case, the inferences to be drawn from the stipulated facts were not necessarily compelling. Here, assuming that the stipulated facts were sufficient to raise the statutory rule of evidence involved, defense rebuttal would have been required to overcome the presumption of the requisite intent and knowledge alleged. As we interpret the *Wilson* rule, where a stipulation of fact does not directly establish the accused's guilt, except by inference, it does not constitute a confession since inferences are factors to be weighed by the triers of fact. A statutory presumption, on the other hand, provides prima facie evidence of the relevant facts to be presumed *unless rebutted*.

issued these checks without an intent to defraud because of depression and because he "just didn't think no more about it."

For the reasons stated, the findings of guilty of Specifications 1–5 of the Charge are hereby set aside and these specifications are dismissed. The findings of guilty of Specifications 6 through 12 of the Charge and the Charge are correct in law and fact. Reassessing the sentence on the basis of the findings herein affirmed, we find that it is nonetheless appropriate.

The findings of guilty, as modified herein, and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.