**UNITED STATES, Appellee,**

v.

**Captain Yolanda M. HUET–VAUGHN, 515–56–4888, United States Army, Appellant.**

**ACMR 9101873.**

U.S. Army Court of Military Review.

25 Jan. 1994.

---

For Appellant: Hillary Richard, Louis P. Font (argued); Luther C. West, Thomas D. Ensign, Jose Luis Morin, Michael Ratner, Captain Deborah A. Hooper, JAGC, Edward Copeland, Thomas Fox, Major James M. Heaton, JAGC, Captain Emmett G. Wells, JAGC (on brief). Hillary Richard, Louis P. Font, Luther C. West, Thomas D. Ensign, Captain Michael A. Egan, JAGC (on brief).

For Appellee: Major Donna L. Barlett, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC (on brief). Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Captain Gregory T. Baldwin, JAGC (on brief).

Before CREAN, GRAVELLE, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

GONZALES, Judge:

Contrary to her plea, the appellant was found guilty on 9 August 1991, by a general court-martial composed of officer members, of desertion with the intent to avoid hazardous duty and shirk important service in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. §§ 885 (1988) [hereinafter UCMJ]. The appellant was sentenced to a dismissal from the service, confinement for 30 months, and forfeiture of all pay and allowances. On 3 December 1991, in the exercise of his clemency powers, the convening authority reduced the period of confinement to 15 months, but otherwise approved the sentence as adjudged.

On 25 February 1992, the Army Clemency and Parole Board determined that the appellant's release from confinement on parole was not warranted.[1] However, the appellant appealed the board's decision to the Deputy Assistant Secretary of the Army for Department of the Army Review Boards and Equal Employment Opportunity Compliance and Complaints Review who ordered the appellant's release on 6 April 1992, after 240 days of confinement. He also remitted the remaining seven months of her approved sentence to confinement.

Before this court, the appellant asserts that the military judge's exclusion of defense evidence and witnesses on the element of her "specific intent" at the time of the offense was prejudicial error. She further contends that the actions of the military judge in denying her the right to submit proof on her "specific intent" as it pertained to war crimes and the planning of the war effort against Iraq at the highest levels of the United

---

1. The Board noted there was community support for the appellant's release. However, the Board also noted that "many other doctors who were called to serve [their] country during the war reported for duty. This was [the appellant's] duty also and [she] failed to live up to [her] agreement."

States Government gave the appearance of unlawful command influence. We initially agreed only with the appellant's first assignment of error and issued an opinion to that effect on 29 October 1993. The government filed a Petition for Reconsideration and Suggestion for *En Banc* on 18 November 1993. The appellant filed a response on 13 December 1993. We vacated our original opinion on 14 January 1994. *United States v. Huet–Vaughn,* ACMR 9101873 (A.C.M.R. 14 Jan. 1994) (order) (unpub.). We also granted the government's request for reconsideration, but the Suggestion for *En Banc* was unanimously rejected by the full court.[2]

We have reconsidered our decision as to the appellant's first assignment of error. We hold that the military judge committed prejudicial error when he granted the government's motion in limine to restrict the appellant from testifying and presenting other evidence of her motive to contest the element of specific intent charged in the desertion offense.

### I. Facts

The appellant joined the United States Army Reserve as a captain in the Medical Corps on 18 June 1990, and was assigned to the 325th General Hospital in Independence, Missouri. Among her personal reasons for joining were public service and the thought that she would gain credibility and be more effective in her community as an anti-nuclear activist. Between 18 and 26 December 1990, she and other medical personnel from her reserve unit were ordered to active duty at Fort Leonard Wood, Missouri. Subsequently, on 29 December 1990, she was reassigned to the 410th Evacuation Hospital that had mobilized at Fort Riley, Kansas, pending its deployment to Southwest Asia in support of Operation Desert Shield.[3] The appellant absented herself from the Army on 31 December 1990 and remained absent until 2 February 1991, when she voluntarily returned to military control. The desertion charge was preferred against her on 6 March 1991, and it was referred to trial on 6 June 1991, by the general court-martial convening authority at Fort Leonard Wood, Missouri.

The military judge's rulings that are the subject of the appellant's two assignments of error occurred at the second Article 39(a), UCMJ, session on 15 July 1991, when the government made a two-part motion in limine. The first part sought to exclude any defense evidence on the merits that pertained to the appellant's alleged status as a conscientious objector,[4] and the dictates of

---

**2.** One judge recused himself from voting on the Suggestion for *En Banc.*

**3.** The 410th Evacuation Hospital deployed to a location 30 miles south of the Iraqi border near Qaysumah, Saudi Arabia, on 27 January 1991, to support VII Corps. The unit returned to Fort Riley, Kansas, in May 1991.

**4.** During the Article 39(a), UCMJ, session, the appellant's civilian defense counsel mentioned that the appellant absented herself during a period of time when no one could file an application for conscientious objection (CO) status. The Army's policy concerning the filing of such an application in December 1990 was stated in Desert Shield Personnel Message (DSPM) Number 31—Personnel Applying for Conscientious Objector Status, issued on 19 October 1990. It provided that a soldier who had not filed a formal application for CO status before his/her unit was alerted for deployment could not submit such an application until his/her arrival in Saudi Arabia. This policy was addressed in three cases before this court earlier this year and found to be an unlawful change to Army Regulation 600–43, Personnel—General: Conscientious Objection (7 Aug. 1987) [hereinafter AR 600–43], and thus had no legal effect. *See United States v. Johnson,* 37 M.J. 982 (A.C.M.R.1993); *United States v. Wiley,* 37 M.J. 885 (A.C.M.R.1993), and *United States v. Walker,* 37 M.J. 892 (A.C.M.R.1993). In all three cases, this court found that the provisions of AR 600–43 rendered an applicant for CO status ineligible for overseas deployment from the time he/she filed or attempted to file an application until Headquarters, Department of the Army, acted on the application.

In *Johnson,* this court determined that Specialist (SPC) Johnson was ineligible for overseas service under AR 600–43 due to his attempt to file an application for CO status in October 1990 and, therefore, set aside the findings of guilty of missing movement overseas through design and willful disobedience of a superior commissioned officer's order to deploy overseas in violation of Articles 87 and 90, UCMJ. We note that SPC Johnson never left military control at Fort Bliss and performed all other military duties in a satisfactory manner.

In *Wiley,* this court determined that Sergeant (SGT) Wiley was also ineligible for deployment to Southwest Asia under AR 600–43 due to his attempts to file an application for CO status twice in December 1990. The findings of guilty

her conscience, religion, philosophy, and beliefs on the conflict in Southwest Asia based on relevancy under Military Rules of Evidence 401, 402, and 802 [hereinafter M.R.E.]. The second part sought to limit any defense evidence and testimony on the merits and in extenuation and mitigation pertaining to the appellant's personal beliefs on the legality of the war in Southwest Asia.

The appellant responded to the first part of the motion by asserting that she and her corroborating witnesses should be allowed to explain to the court members why she quit her unit in December 1990. She contended that their testimony would show that her reason for refusing to deploy was not based on a specific intent "to avoid hazardous duty and shirk important service." Rather, her intent was solely to expose to the public the war crime nature of the impending Persian Gulf war. In response to the second part of the government's motion the appellant argued that she should be allowed to show the court members that she had a good-faith belief that war crimes would be committed during Operation Desert Shield and, therefore, she had an honest and reasonable belief that she was authorized under the Nuremburg Principles and Department of the Army Field Manual 27–10, Law of Land Warfare, July 1956, to refuse to participate in the conflict. She further argued that her testimony and the testimonies of her witnesses were relevant to her defense of mistake of fact. In summary, the appellant asserted that the government's motion in limine, was really an attempt by the government to prevent her from contesting the "specific intent" element of proof on the desertion charge and from raising the defense of mistake of fact to both the charge of desertion and its lesser included offense of absence without leave.

The military judge granted both parts of the government's motion in limine and stated that the appellant's reasons for refusing to deploy were not relevant and did not constitute a defense. He also indicated that her refusal to deploy to a combat environment because she had a good-faith belief that somebody might commit a war crime was also not a defense. However, before the Article 39(a), UCMJ, session ended, the military judge amended his ruling by stating that he would allow the appellant to testify, to a limited extent, on the merits as to her intentions at the time she absented herself. He also stated he would allow the appellant to testify without limitation on her intentions in extenuation and mitigation.

At the beginning of the next Article 39(a), UCMJ, session on 5 August 1991, the appellant's individual defense counsel asked the military judge to clarify his rulings on the motions as there appeared to be some confusion as to when the appellant could testify about her intent. The military judge stated that the appellant could testify in extenuation and mitigation as to her intent at the time she absented herself. In this regard, he also granted the appellant's request for thirteen of fifty-one witnesses. Two of the thirteen witnesses, Lieutenant Colonel Abshier and Major Borserine, were listed on the appellant's written request (Appellate Exhibit XXVI) as being called to testify on the appellant's motives for her absence. However, the military judge said nothing concerning the defense presenting any testimony on the merits about the appellant's intentions.

---

of desertion with intent to avoid hazardous duty and shirk important service, and missing movement through design in violation of Articles 85 and 87, UCMJ, were set aside. However, the court affirmed a finding of guilty of the lesser included offense of absence without leave because SGT Wiley left his unit without authority for four days, during which time his unit deployed, rather than remain with the unit's rear detachment and perform other duties.

In *Walker,* this court determined that SPC Walker was ineligible for deployment under AR 600–43 because he had filed an application for CO status in November 1990. The court set aside the findings of guilty for missing movement and disobedience of a lawful order in violation of Articles 87 and 90, UCMJ. Even though SPC Walker declined to participate in Operation Desert Shield, he remained with his unit's rear detachment and performed duties at the Military Affiliated Radio Systems (MARS) station.

There is no evidence that the appellant filed or attempted to file an application for CO status until 7 February 1991. By that time, the Army had revised DSPM 31 to allow soldiers to file an application for CO status at their present duty station, reserving to the commander exercising general court-martial convening authority the decision whether the applicant would deploy to Southwest Asia.

At the next Article 39(a), UCMJ, session the following day, the appellant's individual defense counsel again asked the military judge to clarify his rulings on when the appellant could testify about her intent. The military judge made the following comments on the record:

Now I had promised you in chambers that I would, on the record, state my rulings ... To clarify them and so you would know exactly what my position is, which apparently was not clear to you. The litigation that we so laboriously went through had to do with the element of the offense that is as follows: That the accused did so with intent to avoid hazardous duty and/or to shirk important service; namely, deployment to Southwest Asia in support of Operation Desert Shield. At issue is whether the accused consciously, intentionally quit her unit so she would not have to perform this hazardous duty and/or important service. To consciously, intentionally quit one's unit to avoid hazardous duty and/or important service because of one's conscience, religion, or personal philosophies is not a defense. Testimony on the merits of this case relating to such contentions is therefore irrelevant, and timely objections made by the prosecution to questions eliciting such testimony will be sustained. Likewise, to consciously, intentionally quit one's unit to avoid hazardous duty and/or important service because of one's belief that she may be asked to become a principal in an—in an illegal act, i.e. a war crime, is speculative and is likewise not a defense. Testimony on the merits of this case relating to such contentions is therefore irrelevant, and timely objections made by the prosecution to questions eliciting such testimony will be sustained. I think that makes my position absolutely clear.

Subsequently, the appellant's individual defense counsel made reference to the military judge's rulings in his opening statement to the court members. He stated that the appellant did not intend to avoid hazardous duty, but that he was restricted from telling them what was the appellant's true specific intent when she absented herself. At the conclusion of the individual defense counsel's opening statement, the judge made the following comments to the court members:

I'll comment briefly on the opening statement, because the references kind of leave you dangling as to what it is that I've ruled and—and what it is that you will or will not be able to consider, depending on what the objections are by counsel. The element in question that's been referred to by Mr. West on various occasions is that the accused did so—that is, to—the first element is that she quit her unit. The second element is the one that's—that's in—that he's been talking about all along. And the element is that the accused did so with intent to avoid hazardous duty and/or to shirk important service; namely deployment to Southwest Asia in support of Operation Desert Shield. At issue is whether the accused consciously, intentionally quit her unit so she would not have to perform these duties. To consciously, intentionally quit one's unit to avoid hazardous duty and/or important service because of one's conscious—excuse me—conscience, religion, or personal philosophies is not a defense. It may be a motive, but it's not a defense. And therefore what I've indicated to Mr. West and I think what he understands is that timely decisions with regard to those things, I will sustain objections to, because they're not relevant. The question is whether she consciously, intentionally quit her unit so she wouldn't have to perform the duties. And I'll explain the rest of the elements later.

Of the ten government witnesses who testified on the merits, Specialist Kelsey and Captain Mings, testified to oral statements made by the appellant to prove that the appellant intended to avoid hazardous duty or shirk important service. None of the appellant's eighteen witnesses who testified on the merits, however, were allowed to testify in any manner that would contest the element of intent.

Despite the military judge's rulings, the appellant was able to twice very briefly express her reasons for quitting her unit during direct examination over the repeated objections by the trial counsel. She also very concisely stated her reasons once during the

trial counsel's cross-examination of her. Finally, her best effort to capsulize her reasons came during redirect examination when her individual defense counsel asked her the final question of why she chose not to deploy. The appellant answered:

> I chose to—to perform what I considered a more important service to—to the American public and to try to educate it regarding the information that I had gathered and the catastrophic nature of what was happening ... that was my intent. My intent was to do what I could to prevent the war from starting.

In all four instances of trying to explain her intent to the court members, the military judge did not permit her to go beyond a sketchy summary of her reasons.

After both the government and the defense rested their cases on the merits, the appellant made a motion for a finding of not guilty based on the government's failure to prove that the appellant intended to "avoid hazardous duty and shirk important service." [5] The military judge denied the motion and commented:

> As—as I explained to you before, what you speak of, in the view of the court, were her motivations. The question is, did she do what she did intentionally, willfully? That's the question. Not what her motives for doing or not doing an intentional act were. Your motion is denied.

In line with his rulings on the motion in limine and the motion for a finding of not guilty, the military judge's instructions to the court members on the elements of proof for desertion included a deviation from the standard instruction. Dep't of the Army Pam. 27–9, Military Judges' Benchbook, para. 3–10 (1 May 1982) (C1, 15 Feb. 1985). The military judge inserted the following between the instruction on the five elements of proof for desertion and defining the word "quit":

> To consciously, intentionally quit one's unit to avoid hazardous duty and/or important service because of one's conscience, reli-

gion, personal philosophies, ethical or professional considerations, is not a defense.[6] Any belief by the accused that what she might have been required to do could have been in violation of international law is not a defense.

## II. The Offense of Desertion

■ The five elements of proof for desertion are: (1) that the accused quit her unit, organization, or other place of duty; (2) that the accused did so with the intent to avoid a certain duty or shirk a certain service; (3) that the duty to be performed was hazardous or the service important; (4) that the accused knew that he or she would be required for such duty or service; and (5) that the accused remained absent until the date alleged. Manual for Courts–Martial, United States, 1984, Part IV, para. 9b(2) [hereinafter MCM, 1984].

■ In Article 85, UCMJ, Congress declared that a particular kind of criminal intent must be found. *United States v. Wimp,* 4 C.M.R. 509, 511 (C.G.B.R.1952). This criminal intent is described in three different forms: intent to remain away permanently, intent to avoid hazardous duty, and intent to shirk important service. 10 U.S.C. §§ 885(a)(1) and (2). Where an offense includes as an element of proof, an intent to do a further act or achieve a future consequence, such an intent is referred to as "specific intent" and the crime as a specific intent crime. *United States v. Holder,* 7 U.S.C.M.A. 213, 22 C.M.R. 3, 5 (1956); *United States v. Welstead,* 36 C.M.R. 707, 710 (A.B.R.1966); *United States v. Victor,* 24 C.M.R. 433, 435 (A.B.R.1957). Proof of a required specific intent is just as necessary as proof of the act itself, and it must be established as an independent fact and with the same certainty as any other element either by direct or circumstantial evidence. *United States v. Sterley,* 764 F.2d 530, 532 (8th Cir.1985), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 544, 88 L.Ed.2d 473 (1985); *United*

---

**5.** The appellant also made an unsuccessful motion for a finding of not guilty at the conclusion of the government's case.

**6.** This language is similar to Manual for Courts–Martial, United States, 1984, Part IV, para. 14c(2)(a)(iii) [hereinafter MCM, 1984], concerning the lawfulness of an order given by a superior commissioned officer.

*States ex rel. Vraniak v. Randolph,* 261 F.2d 234, 237 (7th Cir.1958), *cert. denied,* 359 U.S. 949, 79 S.Ct. 733, 3 L.Ed.2d 681 (1959). In a desertion case, intent does not necessarily exist merely because an absence is proven. *United States v. Guthrie,* 12 C.M.R. 299, 302 (A.B.R.1953).

### III. Intent and Motive

The central issue in this case is whether the appellant had the requisite intent. We, therefore, must address what is intent and, under the circumstances of this case, how evidence of motive is related to it. In the popular mind, intent and motive are not infrequently regarded as one and the same thing. However, in law there is a clear distinction between the two.

Intent refers only to the state of mind when the act is done. *United States v. Fleming,* 7 U.S.C.M.A. 543, 23 C.M.R. 7, 20 (1957); *United States v. Simpson,* 950 F.2d 1519, 1525 (10th Cir.1991). It is intent that determines the criminality of the act. *United States v. Tilton,* 34 M.J. 1104, 1107 (A.C.M.R.1992). Intent becomes an issue at trial when it is a contested element of an offense. *United States v. Franklin,* 35 M.J. 311, 317 (1992). Intent is seldom susceptible to proof by direct evidence. *United States v. Hammond,* 642 F.2d 248, 250 (8th Cir.1981). Without an admission from the accused, the question of intent must be inferred from the facts and circumstances which tend to explain the accused's mental attitude. *Rose v. Clark,* 478 U.S. 570, 581, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986); *United States v. Shull,* 1 U.S.C.M.A. 177, 2 C.M.R. 83, 89 (1952) (Latimer, J., dissenting).

Motive, on the other hand, is the human emotion which incites, stimulates, or prompts a person to act, and is the reason for a person's behavior. *United States v. Lips,* 22 M.J. 679, 682 (A.F.C.M.R.1986), *pet. denied,* 24 M.J. 45 (C.M.A.1987); *United States v. Fleming,* 23 C.M.R. at 20. Motive has also been described as that which prompts the choice or moves the will, thereby inciting or inducing action. *State ex rel. City of Creve Coeur v. Weinstein,* 329 S.W.2d 399, 405 (Mo.App.1959); *City of Kirkwood v. Venable,* 351 Mo. 460, 173 S.W.2d 8, 12

(1943). Motive can never be an essential element of a crime, but a person's motive may be considered by the trier of fact in determining the person's intent. *United States v. Richmond,* 700 F.2d 1183, 1195 (8th Cir.1983). Proof as to motive may be of assistance in throwing light on the intent with which the act was committed. *United States v. Spaeth,* 152 F.Supp. 216, 221 (N.D.Ohio 1957), *affirmed,* 254 F.2d 924 (6th Cir.1958), *cert. denied,* 358 U.S. 831, 79 S.Ct. 52, 3 L.Ed.2d 69 (1958). Good motive alone is never a defense where the act done or admitted is a crime. *United States v. Simpson,* 950 F.2d at 1525. If a person does an act which the law denounces as a crime, motive is immaterial, except insofar as evidence of motive may aid the trier of fact to determine the accused's intent. *United States v. Fleming,* 19 C.M.R. 438, 448 (A.B.R.1955); *United States v. Snow,* 670 F.2d 749, 754 n. 9 (7th Cir.1982); *United States v. Hammond,* 642 F.2d at 250.

In a desertion case, the court must consider the intent of the accused. *United States v. Cothern,* 8 U.S.C.M.A. 158, 23 C.M.R. 382 (1957). Where the intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the fact finder. *Morissette v. United States,* 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952); *United States v. Huff,* 19 C.M.R. 603, 606 (C.G.B.R.1955). Proof of intent may be shown by acts or declarations of the accused prior to the offense and during the absence. *United States v. Welsh,* 33 C.M.R. 502, 503 (A.B.R.1963). Whenever the intent of the accused is in issue, the accused may testify as to his motives. *United States v. Wade,* 28 C.M.R. 704, 708 (C.G.B.R.1959). Even though the evidence militating against the presence of a specific intent may come only from the lips of the accused, it is nonetheless fully competent to place the question of intent squarely in issue. *United States v. Apple,* 2 U.S.C.M.A. 592, 10 C.M.R. 90, 92 (1953). While such testimony may be self-serving, it is open to cross-examination and hence receivable as independent evidence. *United States v. Rainer,* 27 C.M.R. 833, 840 (N.B.R.1958). When an accused's testimony

raises an issue of fact with respect to intent, it can only be resolved by weighing the fair inferences that may be drawn from the facts established by the government against the accused's testimony. *United States v. Foster,* 29 C.M.R. 633, 634 (A.B.R.1960).

■■■ An accused cannot be denied the opportunity to present evidence at trial to negate the existence of every element of the offense charged. *United States v. Huff,* 7 U.S.C.M.A. 247, 22 C.M.R. 37, 40 (1956). This court, its predecessor, and the United States Court of Military Appeals have reviewed numerous cases over the past forty-two years where an accused charged with desertion pled not guilty and presented evidence on the merits in an effort to contest or explain that his intent was other than to remain away permanently, or to avoid hazardous duty, or to shirk important service. *United States v. Wilson,* 20 U.S.C.M.A. 71, 42 C.M.R. 263 (1970); *United States v. Gaines,* 17 U.S.C.M.A. 481, 38 C.M.R. 279 (1968); *United States v. Martin,* 16 U.S.C.M.A. 531, 37 C.M.R. 151 (1967); *United States v. Cooper,* 16 U.S.C.M.A. 390, 37 C.M.R. 10 (1966); *United States v. Cline,* 2 U.S.C.M.A. 411, 9 C.M.R. 41 (1953); *United States v. Kim,* 35 M.J. 553 (A.C.M.R.1992); *United States v. Fields,* 46 C.M.R. 1012 (A.C.M.R.1972); *United States v. Hamilton,* 41 C.M.R. 724 (A.C.M.R.1970); *United States v. Anderson,* 38 C.M.R. 582 (A.B.R. 1967); *United States v. Miller,* 33 C.M.R. 563 (A.B.R.1963); *United States v. Niepoky,* 29 C.M.R. 625 (A.B.R.1960); *United States v. Victor,* 24 C.M.R. 433 (A.B.R.1957); *United States v. LaRue,* 13 C.M.R. 296 (A.B.R.1953); *United States v. Guthrie,* 12 C.M.R. 299 (A.B.R.1953); *United States v. Peregrina,* 8 C.M.R. 293 (A.B.R.1953); and *United States v. Parker,* 2 C.M.R. 457 (A.B.R.1952).[7]

The Army Board of Review in *Guthrie* recognized that the accused's evidence to negate the intent to shirk important service was relevant. The Board stated that proof is permissible to show that a different intent existed, but that an accused's explanatory testimony will not necessarily vitiate the reasonable inferences arising from facts established by the prosecution. However, Private Guthrie's testimony of having an intent other than to shirk important service was corroborated in many particulars by evidence which could not reasonably be disbelieved. Thus, the Board was compelled to conclude that there was a reasonable doubt that the accused possessed the intent to shirk important service. *Guthrie,* 12 C.M.R. at 302.

The Court of Military Appeals also noted in *Cline* that the accused's testimony on the merits raised the issue of whether Private Cline had ever formed an intent to avoid hazardous duty. It concluded that the evidence could only support the lesser included offense of absence without leave. *United States v. Cline,* 9 C.M.R. at 43.

It is quite clear from the precedents cited above, that each of the accused was permitted to testify and offer other evidence to contest the element of intent. The appellant and her four corroborating witnesses, Lieutenant Colonel Abshier, Major Borserine, Professor Swomley, and Ms. Kidder, were not afforded the same full opportunity on the element of intent when they testified.[8]

The government's Petition for Reconsideration and Suggestion for *En Banc* cited several federal circuit courts of appeal cases for the proposition that evidence of motive cannot negate specific intent and, therefore, is irrelevant on the merits. *United States v. Komisaruk,* 885 F.2d 490 (9th Cir.1989); *United States v. Kabat,* 797 F.2d 580 (8th Cir.1986); *United States v. White,* 766 F.2d 22 (1st Cir.1985); *United States v. Dorrell,* 758 F.2d 427 (9th Cir.1985); *United States v. Snow,* 670 F.2d 749 (7th Cir.1982). We note that there is one feature in each of these cases that distinguishes them from the circumstances in *Huet–Vaughn.* Unlike the appellant, none of the accused in these five cases contested the element of specific intent.

7. In some of these sixteen cases, the evidence to contest or explain the accused's intent had the opposite effect and, instead, contributed to the inference that the accused possessed the requisite intent.

8. The testimonies of the appellant and her four corroborating witnesses would have been sufficient to describe the appellant's motive on the element of intent to the court members without the need to call additional witnesses.

Komisaruk did not deny that she wanted to damage everything in sight at the ground control center for the Navstar military navigation system at Vandenberg Air Force Base (AFB). All of the defendants in *Kabat* testified that they intended to disarm a Minuteman II missile and thus interfere with the current U.S. defense policies. The defense acknowledged that White knowingly chose to possess cocaine with the intent to distribute it. Dorrell admitted he intended to enter Vandenberg AFB with the intention of damaging MX missiles. Snow passed Federal Reserve Notes that he knew were counterfeit with the intent to bring about a financial gain to himself. In the case now before us, the appellant's defense at trial was to focus squarely upon the specific intent element and to contest it; it was not conceded.

## IV. Decision

■■■ The military judge correctly viewed the appellant's evidence as to why she left her unit as tending to establish her motive, meaning her reasons for choosing to quit her unit. While evidence of motive is not an affirmative defense to desertion, it may be considered by the trier of fact to determine whether the appellant had the specific intent charged in the desertion offense, i.e. to avoid hazardous duty or shirk important service. The military judge's ruling went beyond what the government was entitled to receive in its motion in limine,[9] and severely hampered the appellant's defense strategy to contest the specific intent element of desertion.[10] Accordingly, we hold that the military judge committed prejudicial error when he restricted the appellant from testifying and presenting other evidence of motive to contest the element of specific intent charged in the desertion offense.[11] See *United States v. Cofield*, 11 M.J. 422, 433 (C.M.A.1981) and *United States v. Barnes*, 8 M.J. 115, 117 (C.M.A.1979).

When the government elects to charge an accused with a specific intent crime, the soldier must be given the opportunity to fairly contest each element of proof. A soldier should not be unfairly restricted from placing the question of intent squarely in issue before the fact finder, because that element of proof is the aggravating factor that greatly increases the severity of possible punishment. MCM, 1984, Part IV, paras. 9c(2) and 9e(1). When intent is contested, evidence of motive is relevant under M.R.E. 401 and 402 to aid the fact finder to determine intent.[12]

---

9. The contents of the government's written motion in limine may have contributed to the military judge's overly broad ruling. Portions of the motion described the appellant's absence in terms of willful disobedience of an order, relying on MCM, 1984, Part IV, para. 14a(2)(a)(i) and (iii) which states that an order to perform military duty may be inferred to be lawful and that the dictates of a person's conscience, religion, or personal philosophy cannot justify or excuse the disobedience of a lawful order. The appellant, however, was never charged with the willful disobedience of an order in violation of Article 90, UCMJ.

10. Even if the appellant had been able to present her motive evidence, the fact finder nevertheless could have convicted her of desertion with the intent to avoid hazardous duty and shirk important service, and adjudged a sentence that included confinement and a dismissal. The court is not bound to accept the accused's testimony on intent. *United States v. Victor*, 24 C.M.R. at 435. Explanatory testimony by an accused will not necessarily avoid reasonable inferences arising from the operative facts established by the prosecution. *United States v. Perry*, 10 C.M.R. 387, 389 (A.B.R.1953). Even when the defense offers evidence to counter the inferences which

could be raised from the facts, the court can draw its own conclusions from the evidence. *United States v. McPherson*, 33 C.M.R. 542, 545 (A.B.R.1963). It is the primary duty of the court members to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact under appropriate instructions, and, in doing so, the court members could reasonably reject the accused's disclaimer of entertaining the specific intent charged. *United States v. Justice*, 14 C.M.R. 669, 676 (A.F.B.R.1953).

11. It would be error to read our decision to mean that soldiers are now free to pick and choose which wars or battles to fight. See footnote 10. Nor does our opinion create a new affirmative defense to a charge of desertion predicated on a soldier's "anti-war," "immoral war," "illegal war," "unnecessary war" sentiments or "public health," "preventive medicine," "humanitarian," or "moral" views.

12. In another recent desertion case, this court stated that the "appellant's actual motivation for leaving his unit is unimportant, if as a consequences of that unauthorized absence appellant had reasonable cause to know that he would avoid important service." *United States v. Kim*, 35 M.J. 553, 555 (A.C.M.R.1992). We note that

Although the appellant was limited in this regard in the presentation of her defense, we find there is ample evidence, including the appellant's own admissions during her testimony on the merits, to support a finding a guilty of a thirty-three-day absence without authority, beyond a reasonable doubt.[13] *United States v. Cline*, 9 C.M.R. at 43. The maximum punishment for this lesser included offense for a commissioned officer is dismissal, confinement for one year, and forfeiture of all pay and allowances. MCM, 1984, para. 10e(2)(c) and R.C.M. 1003(b)(10)(A). This court has the discretion to approve the lesser offense of absence without leave and reassess the sentence, or it may order a rehearing on the desertion charge. *United States v. Cothern*, 23 C.M.R. at 385; *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

We adhere to our original opinion that the appellant's second assignment of error has absolutely no merit. Each counsel representing the appellant during the oral argument was asked to provide a specific fact, other than the collective speculation contained in their appellate brief, for alleging that the military judge's actions gave the appearance of unlawful command influence, so as to warrant a hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). Each counsel acknowledged that he or she had nothing to add for our consideration. Because the appellant offers no colorable scenario to support her contention and because the record is not consistent with such a claim, we find that this assignment of error is completely baseless and warrants no relief. *See United States v. Dykes*, 38 M.J. 270 (C.M.A.1993); *United States v. Lonetree*, 35 M.J. 396, 414 (C.M.A. 1992).

The findings of guilty of the Charge and its Specification are set aside. The sentence is set aside subject to the conditions hereinafter stated. The same convening authority may order a rehearing on the Charge and its Specification and the sentence, which is conditionally set aside for the purpose of rehearing. If the convening authority determines that a rehearing on the Charge and its Specification is impracticable, he may approve a finding of guilty of the lesser included offense of absence without leave in violation of Article 86, UCMJ, and order a rehearing on the sentence only. If the convening authority determines that a rehearing on the sentence likewise is impracticable, he may reassess the sentence.

Senior Judge CREAN and Senior Judge GRAVELLE concur.

---

the court did not state that such evidence was irrelevant or inadmissible. Like the appellant in the instant case, SPC Kim pled not guilty; but unlike the instant case, he was permitted to present his motive evidence before the fact finder on the element of intent.

**13.** In his opening statement to the court members, the appellant's counsel stated that the "lesser included offense of AWOL is far more appropriate than the finding of desertion in this case and we hope that upon the conclusion of this case that you gentlemen will agree and reach that verdict in this case." In his closing argument on the merits, he admitted that the "government has proven the other—other elements of this crime [except intent] eloquently. They've proven she was absent without leave...."